## I.   Homeopathic Drug Preparation

70.   Homeopathic remedies are prepared through repeated dilution ("succussion") of "natural" ingredients.  This serial dilution also includes repeated shaking and striking of the substance.  This process is posited to increase the effectiveness of the substance even if after the dilutions none of the original substance remains.  The homeopathic ingredients in Defendants' products range from various flowers, vegetables, insects, metals, and poison.  In order to not poison a user, the dilutions in Defendants' products are claimed to be up to 200C.

71.   The idea that a substance could be completely physically lacking and still be effective violates fundamental principles of science.  In lower dilutions, the original substance is theoretically present though not detectable even through the use of sensitive chemical analysis.

72.   That a substance can be effective without actually being present or by being present in such small quantities as to not be detectable runs contrary to dose-response relationship established by pharmacology.

73.   Defendants produce expensive sugar tablets and elixirs and play off of consumers' trust and fears.  Consumers trust Defendants because Defendants mislead the consumer into believing that: 1) the ingredients in Defendants' homeopathic drugs have been proven effective and deemed as such by the FDA; 2) Defendants' claims about homeopathic medicine and treatment have been proven effective; and 3) the ingredients in Defendants' homeopathic drugs are actually present in Defendants' homeopathic drugs in a quantity sufficient to produce a biological effect.  The facts are: 1) the FDA has never deemed Defendants' products as effective against any ailment or condition; 2) Defendants' treatments have never been proven effective, nor can they be; and 3) serial dilutions, such as those claimed by Defendants, render the ingredients non-existent.

///

///

74.    Accordingly, Plaintiffs bring this lawsuit to enjoin the ongoing deception of hundreds of thousands of consumers by Defendants, and to recover the funds taken by this unlawful practice.

## V.    RULE 9(b) ALLEGATIONS

75.    Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Accordingly, Plaintiffs allege the following:

76.    WHO:  Defendants Boiron, Inc. and Boiron USA, Inc. made material misrepresentations and failed to disclose, or adequately disclose, material facts as detailed herein.   Except as identified herein, Plaintiffs are unaware, and therefore unable to identify, the true names and identities of those individuals at Boiron, Inc. and Boiron USA, Inc. who are responsible for such material misrepresentations and/or omissions.

77.    WHAT: Defendants made material misrepresentations regarding the efficacy characteristics and "active" ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude.  Specifically, Defendants misrepresented that: (1) Arnicare Arthritis, Chestal, ColdCalm, and Quietude are valid homeopathic medicines; (2) Arnicare Arthritis, Chestal, ColdCalm, and Quietude relieve arthritis, coughs, colds, and sleeplessness respectively and relieve the symptoms of arthritis, coughs, colds, and sleeplessness respectively; (3) the listed and previously described homeopathic ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude are active in Arnicare Arthritis, Chestal, ColdCalm, and Quietude respectively; and (4) listed homeopathic ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude exist in the Arnicare Arthritis, Chestal, ColdCalm, and Quietude.   Each of these representations was false and misleading because: (1) Arnicare Arthritis, Chestal, ColdCalm, and Quietude do not comply with homeopathic norms; (2) Arnicare Arthritis, Chestal, ColdCalm, and Quietude have no effect on arthritis or its symptoms,

coughs or their symptoms, colds or their symptoms, or sleeplessness or its symptoms respectively; (3) the "active" ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude, are so diluted as to be virtually non-existent; and (4) Defendants are aware that Arnicare Arthritis, Chestal, ColdCalm, and Quietude have no effect on arthritis, coughs, colds, or sleeplessness respectively.

78.    WHEN: Defendants made the material misrepresentations, omissions, and non-disclosures detailed herein continuously during the Class Period.

79.    WHERE: Defendants' material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the packaging of Arnicare Arthritis, Chestal, ColdCalm, and Quietude and on Defendants' website.

80.    HOW: Defendants made numerous, written material misrepresentations on the packaging of Arnicare Arthritis, Chestal, ColdCalm, and Quietude and on Defendants' website that were designed to, and in fact did, mislead Plaintiffs and Class members into purchasing Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

81.    WHY: Defendants engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase and use Arnicare Arthritis, Chestal, ColdCalm, and Quietude based on the belief that Arnicare Arthritis, Chestal, ColdCalm, and Quietude would relieve arthritis, coughs, colds, or sleeplessness respectively or symptoms that accompany arthritis, coughs, colds, or sleeplessness respectively. Defendants profited by selling their worthless products to thousands of unsuspecting California consumers.

## VI.    CLASS ACTION ALLEGATIONS

82.    Plaintiffs bring this class action for damages and other monetary relief on behalf of the following class:

/ / /

/ / /

All persons residing in California who purchased Arnicare Arthritis, Chestal, ColdCalm, or Quietude manufactured or sold by Defendants at any time during the four years preceding the filing of this Complaint (the "Class").

83.    Excluded from the Class are governmental entities, Defendants, any entity in which defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.   Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

84.    The proposed Class is so numerous that individual joinder of all its members is impracticable.   Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the total number of Class members is at least in the hundreds of thousands and members of the Class are numerous and geographically dispersed.   While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.   The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

85.    There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff class and these common questions predominate over any questions that may affect individual Class members.   Common questions of fact and law include, but are not limited to, the following:

a.    Whether Defendants' efficacy claims are accurate;

b.    Whether Defendants' efficacy claims are properly substantiated;

c.    Whether Defendants have falsely represented that Arnicare Arthritis, Chestal, ColdCalm, or Quietude have benefits which they do not have;

d.    Whether Defendants knew that its efficacy claims were false;

e.    Whether Defendants' conduct constitutes breach of express

warranty;

        f.      Whether Defendants' conduct constitutes breach of the implied warranty of fitness for a particular purpose;

        g.      Whether Defendants' conduct constitutes negligent misrepresentation;

        h.      Whether Defendants' conduct constitutes a violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*);

        i.      Whether Defendants' conduct constitutes a violation of California's false advertising law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*);

        j.      Whether Defendants' conduct constitutes an unfair, unlawful, and/or fraudulent business practice in violation of California's unfair competition law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

        k.      Whether Plaintiffs and Class members are entitled to compensatory damages, and if so, the nature of such damages;

        l.      Whether Plaintiffs and Class members are entitled to restitutionary relief; and

        m.      Whether Plaintiffs and Class members are entitled to injunctive relief.

        n.      Where Plaintiffs and Class members are entitled to punitive damages.

86.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since they all relied on Defendants' representations concerning Defendants' products and purchased the products based on those representations.

87.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation.  Plaintiffs and their counsel are committed to vigorously

prosecuting this action on behalf of the Class and have the financial resources to do so. Plaintiffs have retained counsel who are widely recognized as some of the most successful and effective class action litigators in the United States, and whose victories have been publicized on CNN, Fox News, MSNBC, and nearly every major newspaper. The firms have also been certified as lead class counsel in similar homeopathic class actions. (*See DeLaRosa v. Boiron, Inc.*, Case No. 8:10-CV-1569-JST (CWx) (C.D. Cal.).

88.     Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impracticable. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

89.     Adjudication of individual class members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

/ / /

/ / /

# VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### (By Plaintiffs and On Behalf of the Class as against All Defendants)

90.   Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

91.   Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.   Specifically, prior to the filing of this action, Plaintiffs purchased Defendants' homeopathic medicine, Arnicare Arthritis, Chestal, ColdCalm, or Quietude.  In so doing, each relied upon Defendants' marketing claims.  Each Plaintiff used Defendants' product, Arnicare Arthritis, Chestal, ColdCalm, or Quietude, as directed, but the product has not worked as advertised, nor did it provide any of the promised benefits.

92.   Prior to filing this action, Plaintiffs' counsel mailed to Defendants, by certified mail, return receipt requested, the written notice required by Civil Code Section 1782(a).  A copy of these warning letters are attached hereto as Exhibits 6-9.

93.   Plaintiffs have filed the declarations of venue required by Civil Code Section 1780(d). See Exhibits 1-5.

94.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumers Legal Remedies Act since Defendants are still representing that their product has characteristics, uses, benefits, and abilities which are false and misleading, and have injured Plaintiffs and the Class.

95.   Plaintiffs and the Class seek:

(a)   an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited

by law, including those set forth in the complaint, pursuant to California Civil Code Section 1780(a)(2);

        (b)    actual damages pursuant to Civil Code Section 1780(a)(1);

        (c)    punitive damages pursuant to California Civil Code Section 1780(a)(4) due to the fraudulent, malicious, and willful nature of Defendants' conduct;

        (d)    statutory damages of no less than $1,000 per class member pursuant to California Civil Code Section 1780(a)(1);

        (e)    restitution pursuant to Civil Code Section 1780(a)(3); and

        (f)    any other equitable or legal relief that the Court deems proper pursuant to California Civil Code Section 1780(a)(5).

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.

**(By Plaintiffs and On Behalf of the Class as against All Defendants)**

96.    Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

97.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs purchased Defendants' homeopathic medicine, Arnicare Arthritis, Chestal, ColdCalm, or Quietude. In so doing, each relied upon Defendants' marketing claims. Each Plaintiff used Defendants' product, Arnicare Arthritis, Chestal, ColdCalm, or Quietude, as directed, but the product has not worked as advertised, nor did it provide any of the promised benefits.

98.    Defendants' actions as alleged in this Complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code section 17200 in that Defendants' actions are unfair, unlawful, and fraudulent, and

because Defendants have made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet.

99.   Defendants' business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that consumers are misled by the claims made with respect to Defendants' products as set forth herein.

100.   Defendants' business practices as alleged herein are unlawful because the conduct constitutes false marketing and advertising under California Business and Professions Code section 17500, et seq. and the California Consumer Legal Remedies Act.

101.   Defendants' business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that Defendants' products have properties that it in fact they do not have.

102.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendants are marketing and selling their products in a manner likely to deceive the public.

103.   Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

104.   Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint.  Plaintiffs and the Class also seek an order requiring Defendants to make full restitution of all moneys it wrongfully obtained from Plaintiffs and the Class.

/ / /

/ / /

CLASS ACTION COMPLAINT

# THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17500 ET SEQ.

### (By Plaintiffs and On Behalf of the Class as against All Defendants)

105.   Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

106.   Plaintiffs have standing to pursue this cause of action because Plaintiffs have suffered injury in fact and has lost money as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs purchased Defendants' homeopathic medicine, Arnicare Arthritis, Chestal, ColdCalm, or Quietude.  In doing so, each relied upon Defendants' marketing claims.  Each Plaintiff used Defendants' product, Arnicare Arthritis, Chestal, ColdCalm, or Quietude, as directed, but the product has not worked as advertised, nor did it provide any of the promised benefits.

107.   Defendants have engaged in false advertising as they have disseminated false and/or misleading representations about Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

108.   Defendants knew or should have known by exercising reasonable care that their representations were false and/or misleading.  During the Class Period, Defendant engaged in false advertising in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*, by misrepresenting in their advertising and marketing of Arnicare Arthritis, Chestal, ColdCalm, and Quietude to Plaintiffs, Class members, and the consuming public that, *inter alia*: (1) Arnicare Arthritis, Chestal, ColdCalm, and Quietude are valid homeopathic medicines; (2) Arnicare Arthritis, Chestal, ColdCalm, and Quietude reduce the duration and severity of symptoms as advertised by Defendants; (3) ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude have the ability reduce the duration and severity of symptoms as advertised by Defendants. Moreover, each of the other foregoing representations made by Defendants' alleged in this

Complaint was false and misleading.

109.   By disseminating and publishing these statements in connection with the sale of Arnicare Arthritis, Chestal, ColdCalm, and Quietude, Defendants have engaged in and continue to engage in false advertising in violation of Bus. & Prof. Code §§ 17500, *et seq.*

110.   As a direct and proximate result of Defendants' conduct, as set forth herein, Defendants have received ill-gotten gains and/or profits, including but not limited to, money.  Therefore, Defendants have been unjustly enriched.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs request restitution and restitutionary disgorgement for all sums obtained in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

111.   Plaintiffs and Class members seek to enjoin Defendants from engaging in these wrongful practices, as alleged herein, in the future.  There is no other adequate remedy at law and if an injunction is not ordered, Plaintiffs and the Class will suffer irreparable harm and/or injury.

## **FOURTH CAUSE OF ACTION**
### **BREACH OF EXPRESS WARRANTY**
**(By Plaintiffs and on Behalf of the Class Against All Defendants)**

112.   Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

113.   Defendants are merchants as defined by the applicable Uniform Commercial Code ("U.C.C.") provisions and sold goods to Plaintiffs and Class members.

114.   Defendants are in privity with Plaintiffs and Class members because they sold Arnicare Arthritis, Chestal, ColdCalm, and Quietude to Plaintiffs and Class members.

115.   Defendants expressly warranted via their advertising, statements, and

website information, and disseminated information to the general public, including to Plaintiffs and Class members, that *inter alia*: (1) Arnicare Arthritis, Chestal, ColdCalm, and Quietude are valid effective homeopathic medicines; (2) Arnicare Arthritis, Chestal, ColdCalm, and Quietude reduces the duration and severity of symptoms of arthritis, coughs, colds, and sleeplessness respectively; and (3) the purported "active" ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude are actually active ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

116.   The statements made by Defendants were affirmations of fact that became part of the basis of the bargain and created an express warranty that Arnicare Arthritis, Chestal, ColdCalm, and Quietude would conform to the stated promises.  Plaintiffs and Class members placed importance on Defendants' representations.

117.   Defendants breached each of the aforementioned warranties and representations because: (1) Arnicare Arthritis, Chestal, ColdCalm, and Quietude do not comply with homeopathic norms; (2) Arnicare Arthritis, Chestal, ColdCalm, and Quietude have no effect on the arthritis, coughs, colds, or sleeplessness respectively or symptoms that accompany arthritis, coughs, colds, or sleeplessness respectively; and (3) the "active" ingredients in Arnicare Arthritis, Chestal, ColdCalm, and Quietude are so diluted as to be virtually non-existent.

118.   As a result of Defendants' breach of express warranty, Plaintiffs and Class members were injured in the amount of all or a portion of their purchase price of Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

119.   On December 1, 2011 Plaintiffs' counsel mailed to Defendants by certified mail, with return receipt requested, written notice that Defendants' conduct constitutes a breach of both express and implied warranties so as to provide reasonable, pre-litigation notice of their violations.  A copy of that written notice is attached hereto as Exhibit 10.

/ / /

/ / /

# FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

### (By Plaintiffs and on Behalf of the Class Against all Defendants)

120. Plaintiffs incorporate by this reference the allegations contained in the paragraphs above as if fully set forth herein.

121. Defendants are merchants as defined by the applicable U.C.C. provisions and sold goods to Plaintiffs and Class members.

122. Defendants are in privity with Plaintiffs and Class members because they sold Arnicare Arthritis, Chestal, ColdCalm, and Quietude to Plaintiffs and Class members.

123. Defendants knew that Plaintiffs and Class members intended to purchase Arnicare Arthritis, Chestal, ColdCalm, and Quietude to relieve arthritis, coughs, cold, and sleeplessness respectively and symptoms of arthritis, coughs, colds, and sleeplessness respectively and were relying on Defendants' skill and expertise in making their decisions to purchase Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

124. Defendants represented via their advertising, statements, and website information, and disseminated information to the general public, including to Plaintiffs and Class members, that *inter alia*, Arnicare Arthritis, Chestal, ColdCalm, and Quietude were fit for their advertised purpose of relieving arthritis, coughs, colds, or sleeplessness respectively or symptoms that accompany arthritis, coughs, colds, or sleeplessness respectively.

125. Defendants breached the implied warranty of fitness for a particular purpose because Arnicare Arthritis, Chestal, ColdCalm, and Quietude are not fit for their advertised purpose—namely, relieving arthritis, coughs, colds, or sleeplessness or symptoms that accompany arthritis, coughs, colds, or sleeplessness.

126. As a result of Defendants' breach of implied warranty, Plaintiffs and Class

1  members were injured in the amount of all or a portion of their purchase price of
2  Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

3       127.   On December 1, 2011 Plaintiffs' counsel mailed to Defendants by certified
4  mail, with return receipt requested, written notice that Defendants' conduct constitutes
5  a breach of both express and implied warranties so as to provide reasonable, pre-
6  litigation notice of their violations.  A copy of that written notice is attached hereto as
7  Exhibit 10.

8

9                        **FIFTH CAUSE OF ACTION**
10                    **NEGLIGENT MISREPRESENTATION**
11       **(By Plaintiffs and on Behalf of the Class Against All Defendants)**
12       128.   Plaintiffs incorporate by this reference the allegations contained in the
13  paragraphs above as if fully set forth herein.

14       129.   During the Class Period, Defendants misrepresented to consumers through
15  the advertising, marketing, and sale of Arnicare Arthritis, Chestal, ColdCalm, and
16  Quietude that Arnicare Arthritis, Chestal, ColdCalm, and Quietude relieve arthritis,
17  coughs, colds, or sleeplessness respectively or symptoms that accompany arthritis,
18  coughs, colds, or sleeplessness.

19       130.   Defendants' misrepresentations regarding the characteristics and benefits
20  of Arnicare Arthritis, Chestal, ColdCalm, and Quietude were false because Arnicare
21  Arthritis, Chestal, ColdCalm, and Quietude do not comply with homeopathic norms,
22  have no effect on arthritis, coughs, colds, or sleeplessness respectively or symptoms
23  that accompany arthritis, coughs, colds, or sleeplessness, and do not include the active
24  ingredients they purport to contain.

25       131.   Defendants' misrepresentations regarding the characteristics and benefits
26  of Arnicare Arthritis, Chestal, ColdCalm, and Quietude were material because a
27  reasonable consumer would attach importance to them in determining whether to
28  purchase and consume Arnicare Arthritis, Chestal, ColdCalm, and Quietude.  In fact,

because Arnicare Arthritis, Chestal, ColdCalm, and Quietude have no stated or implied purpose other than to combat arthritis, coughs, colds, or sleeplessness respectively or symptoms that accompany arthritis, coughs, colds, or sleeplessness, their lack of efficacy renders the products completely and utterly worthless.

132.   Defendants' material misrepresentations regarding the characteristics and benefits of Arnicare Arthritis, Chestal, ColdCalm, and Quietude were false and made without reasonable grounds for believing them to be true.

133.   Defendants made material misrepresentations regarding the characteristics and benefits of Arnicare Arthritis, Chestal, ColdCalm, and Quietude with the intent to induce Plaintiffs and Class members to purchase and consume Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

134.   Plaintiffs and Class members reasonably relied on Defendants' material misrepresentations in choosing to purchase and consume Arnicare Arthritis, Chestal, ColdCalm, and Quietude.

135.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have incurred damages in an amount to be proven at trial. Plaintiffs and Class members are not seeking damages arising out of personal injuries.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs and members of the Class request that the Court enter an order or judgment against Defendants as follows:

1.   Certification of the proposed classes, appointment of the Plaintiffs as class representatives and their counsel of record as Class Counsel, and notice thereto to be paid by Defendants;

2.   Adjudge and decree that Defendants have engaged in the conduct alleged herein;

3.   For restitution and disgorgement on certain causes of action;

/ / /

4.     For an injunction ordering Defendants to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.     For compensatory, actual, general, statutory, exemplary, punitive, and any other damages legally available according to proof on certain causes of action;

6.     For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

7.     Costs of the proceedings herein;

8.     Reasonable attorneys' fees as allowed by statute; and

9.     Any and all such other and further relief that this Court may deem just and proper.

Dated:  December 2, 2011

NEWPORT TRIAL GROUP
A Professional Corporation

By: _____
    Scott J. Ferrell

Attorneys for Plaintiff and the Class

- 34 -